IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CHRISTOPHER REGENAUER,

Plaintiff,

v.

TOWN OF BELOIT and RONALD NORTHROP,

Defendants.

OPINION and ORDER

20-cv-153-jdp

Plaintiff Christopher Regenauer, an officer in the Town of Beloit Police Department, contends that defendant Ronald Northrop, the town's police chief, disciplined Regenauer and failed to promote him in retaliation for his opposition to Northrop's plan to restructure the department. Regenauer brings claims against Northrop and the Town of Beloit under the First Amendment to the United States Constitution.

Defendants have moved for summary judgment on several grounds. Defendants contend that Regenauer has failed to show that his speech was protected or that Northrop's conduct was motivated by Regenauer's speech. Dkt. 22. The first issue presents a question of law for the court. On the summary judgment record, defendants have failed to show that Regenauer's speech was unprotected. As for the second issue, Regenauer has adduced evidence that would allow a reasonable jury to find that Regenauer's speech was the cause of Northrop's adverse actions. Defendants also contend that: (1) the town shouldn't be liable for Northrop's actions; (2) Northrop is entitled to qualified immunity for his actions; and (3) Northrop's conduct doesn't warrant punitive damages. For the reasons explained below, the court is unpersuaded on all three points. Regenauer is entitled to present his case to a jury.

UNDISPUTED FACTS

The following facts are undisputed except where noted. The court will discuss additional facts as they become relevant to the analysis.

Plaintiff Christopher Regenauer has been employed as a police officer by defendant Town of Beloit since 2011. He has been president of his union, the Town of Beloit Professional Police Association, since 2012. Defendant Ronald Northrop has been the town's police chief since 2016.

On October 29, 2018, Regenauer saw a posting for a town board meeting that afternoon to discuss restructuring the police department. Regenauer hadn't heard anything about restructuring the department, so he attended the meeting while he was off-duty. At the meeting, Northrop and Gene Wright, the acting town administrator, presented a plan to the board under which the department's two sergeants would be promoted to day-shift lieutenants. Under the plan, the sergeants' second- and third-shift supervisory responsibilities would be handled by creating two new corporal positions.

After the presentation, Regenauer asked to speak to the board about the proposal. He said that the proposal might violate the union contract by creating the corporal positions. He asked where the money for the promotions would come from in the department's budget. And he raised the concern that the proposal would diminish the services that the department could provide to the town by shifting two officers from patrol into the department's administration. Regenauer also says that he told the board that the proposal would decrease officer safety, although defendants dispute that he said this. Northrop and Wright heatedly challenged Regenauer's assertions. The board did not act on the restructuring proposal that evening.

2

After the meeting, Northrop told Regenauer that he felt blindsided by Regenauer's comments to the board. He told Regenauer that he should have first spoken to Northrop before going up the chain of command to the board. A few days later, Northrop reiterated these concerns to Regenauer, saying that he felt thrown under the bus and that Regenauer was challenging his authority as chief to restructure the department.

Regenauer met with Northrop and Wright on December 28 to present an alternative to their proposed restructuring plan. He told them that he was concerned that their plan would reduce officer safety and that it "wouldn't work in 24-hour police operations." Dkt. 14 (Regenauer Dep. 57:13–14). Despite Regenauer's objections, Northrop began implementing his plan on January 1, 2019, when he promoted the department's two sergeants, Bryan Hasse and LeAnn Jones, to lieutenants. (It's unclear whether the board had approved Northrop's plan by then or whether board approval was even required, but those facts are not material to this case.) He decided to fill the now-vacant sergeant positions by promoting two patrol officers through a formal promotional process.

Northrop posted the sergeant positions on February 4. The same day, he issued a "predetermination notice" to Regenauer concerning his conduct in two high-speed pursuits in December 2018. Dkt. 28-20. In the notice, Northrop said that he had reached an initial determination that Regenauer's conduct warranted a six-day unpaid suspension, but he said that Regenauer could meet with him to present evidence and argue against the discipline. A few days later, Regenauer's union representative, Mike Goetz, emailed Northrop about the notice, contending that it violated Regenauer's due-process rights. Northrop then met with Regenauer and Goetz. After conferring with the town's attorney, Northrop agreed that the

3

predetermination notice "would not have any effect right now" and that the department would consider redoing its investigation and interviewing Regenauer. Dkt. 18 (Goetz Dep. 42:1–5).

In the meantime, three officers had applied for the two open sergeant positions: Regenauer, Gregg Cisneros, and Emerson Tucker. The promotional process included three scored phases—a written test, an interview with a panel of law-enforcement managers from outside the department, and an interview with Northrop—followed by an unscored review by Northrop of the applicants' files. After selecting two preferred candidates, Northrop would recommend them to the town board for promotion. Regenauer scored second out of three in the first two phases, but Northrop gave him the lowest score by far in the third phase. On March 14, Northrop recommended Cisneros and Tucker for promotion. The parties don't say whether the board approved the promotions, but the court infers that it did.

About two weeks after Northrop announced the promotions, Lieutenant Hasse interviewed Regenauer about his conduct in the two high-speed pursuits at issue in the predetermination notice as well as a third pursuit that had since come to light. Northrop then issued a written reprimand to Regenauer based on the three pursuits, ordering him to undergo additional training. Northrop held a follow-up meeting with Regenauer a few days later, during which Northrop told Regenauer that he was a good officer, but he needed to follow the chain of command when he disagreed with Northrop. He told Regenauer that he would be removing him from his duties with the Rock County Sheriff's Department's Special Investigations Unit to focus on his duties in the department. And he said that Hasse would supervise Regenauer's performance until it met Northrop's expectations.

ANALYSIS

To establish a prima facie First Amendment retaliation claim, Regenauer must adduce evidence to support three elements: (1) he engaged in protected First Amendment activity; (2) defendants subjected him to an adverse employment action that was likely to deter the exercise of free speech; and (3) Regenauer's speech was at least a motivating factor in defendants' action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). The burden then shifts to defendants to show that they would have subjected Regenauer to the same conduct regardless of his protected speech. *Id.* at 717. If defendants make that showing, Regenauer must adduce evidence that defendants' proffered reasons were a pretext for retaliatory animus. *Id.*

Defendants contend in their reply brief that Regenauer has waived numerous arguments by failing to address points raised in defendants' initial brief. Regenauer primarily organized his brief as a narrative timeline rather than responding to the legal issues raised by defendants. But the court will not deem Regenauer to have forfeited an argument so long as he fairly addressed, even if indirectly, the substantive issues raised by defendants.

## A. Whether Regenauer's speech is protected

Defendants contend that Regenauer didn't engage in protected speech on any occasion, addressing specific arguments toward specific instances in which Regenauer spoke. In response, Regenauer says that after the October 2018 town board meeting, he engaged in "continued speech" that should not "be viewed as separate events instead of a series of continuous events." Dkt. 33, at 8. But he cites no authority to support this proposition. Whether a public employee's speech is protected "must be determined by the content, form, and context *of a given statement*." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983) (emphasis added). So the court will consider whether Regenauer's speech was protected on a statement-by-statement basis.

In his response brief, Regenauer primarily focuses his arguments on his address to the town board during its October 2018 meeting. Elsewhere, he briefly contends that he engaged in protected speech on three other occasions: (1) presenting his alternative restructuring plan to Northrop and Wright in December 2018; (2) negotiating a union contract with Northrop in January 2019; and (3) telling his coworkers that he was considering filing a complaint against Northrop. Regenauer doesn't address defendants' arguments about other instances in which he spoke or adduce any evidence that his speech on those instances was protected, so he has forfeited any argument that he engaged in protected speech on those occasions. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (plaintiffs who "did not provide the district court with any basis to decide their claims, and did not respond to the [defendant's] arguments," waived their claims).

To show that his speech was protected, Regenauer must first show that he made the speech as a private citizen and that his speech addressed a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Even if Regenauer makes this showing, defendants would be entitled to summary judgment if they "prov[e] that the interest of [Regenauer] as a citizen in commenting on the matter is outweighed by the interest of [defendants], as employer, in promoting effective and efficient public service." *Gustafson v. Jones*, 290 F.3d 895, 909 (7th Cir. 2002). Whether Regenauer's speech was protected is a question of law, not fact. *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013).

1. **Status of the statements at issue**

   a. **October 2018 town board meeting**

Defendants concede, at least implicitly, that Regenauer spoke as a private citizen when he addressed the town board at its October 2018 meeting. *See also Graber v. Clarke*, 763 F.3d

888 (7th Cir. 2014) ("[I]f [a] public employee is speaking in his capacity as a union representative, he is speaking as a citizen."). But defendants contend that his speech is unprotected because it didn't address a matter of public concern. To make this determination, the court must examine the statement's "content, form, and context . . . as revealed by the whole record." *Connick*, 461 U.S at 147–48. Although the statement's content is not necessarily dispositive, it is the most important of these factors, *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 985 (7th Cir. 2013), so the court will begin there.

Regenauer testified in his deposition that he raised four objections to the town board regarding Northrop's plan to convert two patrol officers into supervisors: (1) the plan might violate the union contract by converting two union members into supervisors; (2) the plan involved two promotions that the town hadn't budgeted for; (3) the plan would reduce officer safety; and (4) the plan would reduce the level of services that the department could provide the town. Dkt. 14 (Regenauer Dep. 41:11–18).

Defendants contend that the content of Regenauer's speech wasn't a matter of public concern because it involved "the terms and conditions of employment[,] the essential stuff of collective bargaining," which the Supreme Court has "never" held to be of public concern. *Janus v. Am. Fed. of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2495 (2018) (Kagan, J., dissenting). They cite cases in which courts have held that the content of a union member's speech didn't address matters of public concern because it was limited to personal grievances. *See Bivens v. Trent*, 591 F.3d 555, 562 (7th Cir. 2010) (union grievance over lead exposure didn't address matter of public concern because it "made no reference to potential safety issues for the public"); *Shefcik v. Vill. of Calumet Park*, 532 F. Supp. 2d 965, 977 (2007) ("[I]nternal

police affairs" such as overtime pay, seniority, and hiring procedures "are not matters of public concern.")

But the content of Regenauer's speech wasn't limited to the terms and conditions of employment; he also testified that he addressed budgetary concerns, officer safety, and public safety. *Graber*, 763 F.3d 888, is on point. In that case, like this one, a sheriff's deputy spoke against a departmental policy because he was concerned that the policy "violated a union provision and raised safety issues for union members as well as the general public." *Id.* at 896. The court of appeals held that the content of the deputy's speech involved an issue of public concern and concluded that his speech was protected. *Id.*

Defendants contend that Regenauer didn't mention officer safety, citing testimony from later in his deposition that he was "not sure" whether he raised the issue at the October 2018 meeting, Dkt. 14 (Regenauer Dep. 57:23). Taking Regenauer's testimony in the light most favorable to him, as the court must on defendants' motion, it's reasonable to infer that Regenauer believed that he addressed the subject at the meeting but could not remember with certainty. But even if Regenauer didn't address officer safety, that leaves his statements that the promotions were not budgeted for and that they would reduce the level of services that the department could provide the town. So the content of Regenauer's speech included matters of public concern—the town's budget and the level of services provided by the department—which weighs in his favor.

As for form, Regenauer spoke at a public meeting to elected officials, not through his chain of command, so this factor weighs in his favor as well. *See Willoby v. Mason City, Ill.*, 449 F. Supp. 3d 806, 819 (C.D. Ill. 2020) (plaintiff police officer who addressed his statements to public officials rather than to his superiors spoke on matter of public concern) (citing *Kubiak*

8

*v. City of Chi.*, 810 F.3d 476, 483 (7th Cir. 2016)). Defendants' only argument regarding form is based on Regenauer's testimony that he didn't remember seeing any members of the public at the meeting. They say that if he had "intended to express concerns to the public and make the public aware of his objections, he could have chosen a different forum." Dkt. 25, at 28. But Regenauer learned about Northrop's proposal for the first time that evening, and he testified in his deposition that he believed that the board's discussion "was moving in a direction . . . [toward] approval" of the plan during the meeting. Dkt. 14 (Regenauer Dep. 36:8–10). Defendants haven't adduced any evidence that calls into question Regenauer's belief that action on the proposal was imminent. And in any event, defendants cite no authority that suggests that a public employee must choose the forum with the greatest public exposure for his speech to be protected.

As for context, defendant's argument on this point overlaps with their argument on content, as they contend that Regenauer's speech involved internal departmental affairs rather than matters of general public concern. This argument fails for the same reason here, and defendants identify nothing else in the context of Regenauer's speech to suggest that it did not address a matter of public concern.

Regenauer addressed the town board as a citizen, not as an employee. And the content, form, and context of his address show that his "speech can fairly be said to relate to a matter of political, social, or other concern to the community, rather than merely a personal grievance of interest only to the employee," so he spoke on a matter of public concern. *Gustafson*, 290 F.3d at 907.

### b.   Discussion of alternative restructuring plan

Regenauer contends that he engaged in protected speech in December 2018, when he discussed his alternative restructuring plan with Northrop and Wright, the town administrator. As before, defendants don't contend that Regenauer spoke as an employee during this meeting, but they deny that he spoke on a matter of public concern. So the court will again examine the content, form, and context of Regenauer's speech.

As for content, Regenauer testified in his deposition that "[a] lot of [his speech] had to do with officer safety." Dkt. 14 (Regenauer Dep. 57:2–3). Defendants don't contend that officer safety is a matter of purely personal concern. *See also Shefcik*, 532 F. Supp. 2d at 976–77 (officer safety is a matter of public concern) (collecting cases). But they contend that Regenauer hasn't provided enough detail about his statements to show that they involved a matter of public concern. The court disagrees. Shortly after Regenauer testified that he spoke about officer safety during this meeting, he was asked why he believed his alternative plan was better than Northrop's in that area. He responded that Northrop's plan "decreased patrol by almost 20 percent," which increased the number of "[s]ingle-officer shifts in one of the most violent cities in Wisconsin." *Id.* at 61:25–62:3. It's reasonable to infer that Regenauer made the same point regarding officer safety in his meeting with Northrop and Wright.

Defendants cite two cases in which a public employee's description of his speech was too vague to show that the content of his speech involved a matter of public concern, but neither case is on point. In both cases, nothing in the record identified the specific content of the plaintiffs' speeches. *See Olendzki v. Rossi*, 765 F.3d 742, 748 (7th Cir. 2014) ("[W]e have scoured the record but found nothing to identify [plaintiff's] precise statements."); *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1123–24 (7th Cir. 2009) (plaintiff who testified that

there "was a discussion amongst everybody in regards to different things and how manpower was reduced" and who "did not provide any details about the statements he made at the meeting" failed to show that he spoke on a matter of public concern). Here, the court can adequately discern the content of Regenauer's speech from his deposition testimony.

Defendants raise no arguments in their initial brief regarding the form or context of this speech. In their reply brief, they contend that the form of the speech—a private meeting with Northrop and Wright—weighs against Regenauer. But they have waived the point by raising it for the first time in their reply brief. *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014). And in any event, they cite no authority in which a court has held that a public employee's speech addressing a matter of public concern was unprotected solely because the employee raised the issue in a private meeting with policymakers.

The content of Regenauer's discussion with Northrop and Wright involved a matter of public concern, and defendants identify nothing in the form or context of the speech that suggests that the court should conclude otherwise.

### c. Union contract negotiations

Regenauer contends that he engaged in protected speech during union contract negotiations with Northrop in January 2019. But he doesn't describe anything that he said during this meeting other than to say that "the negotiations involved the use of part-time officers." Dkt. 33, at 12. Because Regenauer hasn't described his statements in any detail, the court can't determine whether his statements were protected, and he has failed to meet his burden to show that he spoke on a matter of public concern during this meeting. *Olendzki*, 765 F.3d at 749.

### d. Discussion with coworkers

Regenauer contends that he engaged in protected speech with two coworkers after he received the written reprimand from Northrop based on the three pursuits. He testified that he told his coworkers that he felt like he was being "target[ed]," "retaliated against," and "harassed" by Northrop, and that after "five months straight of hell," he was considering filing a complaint against Northrop. Dkt. 14 (Regenauer Dep. 171:21–172:9). But these statements don't involve a matter of public concern, only "a matter of purely private interest": Northrop's treatment of Regenauer. *Bivens*, 591 F.3d at 562. They aren't entitled to protection.

### 2. Balance of interests

Even though Regenauer spoke as a citizen on matters of public concern during the town board meeting and during his meeting with Northrop and Wright, his speech would be unprotected if defendants' interest "in promoting effective and efficient public service" outweighed Regenauer's interest in his speech. *Gustafson*, 290 F.3d at 909. The court of appeals has identified seven "interrelated factors" that guide this inquiry:

> (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place, and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public.

*Id.* Like the other components of the inquiry into whether Regenauer's speech was protected, this interest balancing presents a question of law for the court. *Sullivan v. Ramirez*, 360 F.3d 692, 701 (7th Cir. 2004).

Defendants contend in their reply brief that Regenauer has waived this issue. Dkt. 40, at 5. Regenauer did not explicitly address defendants' arguments on this balancing test in his brief, or even address the balancing test at all, although he did refer indirectly to the first and second factors identified by the court of appeals. *See* Dkt. 33, at 9, 11. So Regenauer is not entitled to summary judgment on this question.

But neither have defendants shown that "the record is so one-sided as to rule out the prospect of a finding in favor of [Regenauer]" under these factors. *Harnishfeger v. United States*, 943 F.3d 1105, 1115 (7th Cir. 2019). The court of appeals has "long recognized" that "police protection and public safety" are among the matters of greatest public concern. *Gustafson*, 290 F.3d at 907. And when a public employee's speech "has touched upon a matter of strong public concern, the government employer typically must offer particularly convincing reasons to suppress it." *Kristofek*, 832 F.3d at 796 (internal quotation marks omitted). Defendants' half-page argument, *see* Dkt. 25, at 38, does not present convincing reasons.

Defendants make three short arguments on this point. First, they contend that "Regenauer's speeches which addressed employment grievances and internal disputes within the Department" were "disruptive, disrespectful to his superiors, and impacted the efficiency of the workplace by attempting to circumvent internal policies." *Id.* The policies they cite, in relevant part, direct employees to "handle all [operational and administrative] complaints or concerns internally unless otherwise allowed by law, policy, or contract." Dkt. 24-4, at 2. But Regenauer did not raise private complaints or grievances. The court concluded above that Regenauer spoke on a matter of public concern at the board meeting and in presenting his alternative plan precisely because he addressed more than mere "employment grievances and internal disputes."

Second, defendants say that Regenauer "attempted to circumvent established procedures for negotiations and attempted to involve the [union] in situations that were exclusively controlled by the Town." Dkt. 25, at 38. In support of this statement, they cite a provision from the union contract generally reserving the town's rights concerning the department's organizational structure. *See* Dkt. 24-9, Art. 2. But defendants haven't shown that Regenauer's speech was intended to circumvent the collective bargaining process, even if it touched on the organization of the police department. And if defendants were correct in their contention that speech on matters under exclusive municipal control is unprotected, it would effectively bar public employees from speaking at all on many issues of significant public concern.

Third, defendants say that "Regenauer's employment as a police officer required loyalty and adherence to the chain of command" and that "his repeated attempts to diverge from that chain should not be condoned." Dkt. 25, at 38. The importance of maintaining discipline and good order among police officers is well recognized. But defendants cite no evidence that Regenauer's speech was disrespectful or insubordinate or that it jeopardized the good order of the police department. Regenauer spoke at the town board meeting because he believed that the board was about to approve Northrop's proposal before Regenauer would have the chance to take his concerns up the chain of command. And after the board didn't take immediate action on Northrop's proposal, Regenauer took his alternative proposal to Northrop and Wright rather than pursuing further discussions with the board.

Regenauer spoke as a citizen on a matter of public concern during the October 2018 town board meeting and during his December 2018 meeting with Northrop and Wright. But

neither side has shown that its interests outweighed the other side's as a matter of law. So the court will answer this question after the evidence has been presented at trial.

## B.  Whether Regenauer's speech motivated defendants' adverse employment actions

In addition to showing that he engaged in protected speech, Regenauer must establish two more elements to make out a prima facie First Amendment retaliation claim. First, he must show that defendants engaged in an adverse employment action likely to deter "a person of ordinary firmness from continuing to engage in [the] protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). And second, Regenauer must adduce evidence that his protected speech was a motivating factor in defendants' decision to engage in the challenged conduct. *Massey*, 457 F.3d at 716. If Regenauer makes this showing, the burden shifts to defendants to adduce evidence that they would have engaged in the same conduct regardless of Regenauer's protected speech. *Id.* at 717. If defendants establish a nonretaliatory reason for their conduct, Regenauer must then adduce evidence that the adverse action would not have happened but for his protected speech—a higher burden than he bears in making his prima facie case. *Surita*, 665 F.3d at 874.

In his brief, Regenauer contends that defendants engaged in three adverse employment actions: (1) investigating Regenauer and issuing a "predetermination notice" to him based on his conduct in two high-speed pursuits; (2) refusing to promote Regenauer to an open sergeant position; and (3) placing Regenauer on a performance improvement plan and removing him from the Special Investigations Unit.[1] Defendants do not dispute that these were adverse actions that would deter speech.

---

[1] As with Regenauer's speech, defendants contend in their initial brief that many other actions taken by Northrop were not retaliatory. Except for these three actions, Regenauer doesn't address defendants' arguments or otherwise adduce evidence of retaliation, so he has waived

Defendants contend that Regenauer hasn't adduced any evidence of causation. To meet his initial burden on this element, Regenauer must show only that his speech was "a factor that motivated the defendant[s'] actions." *Massey*, 457 F.3d at 717 (quoting *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004)). Regenauer may rely on either direct or circumstantial evidence (or both) to make this showing. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Circumstantial evidence "may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other employees in the protected group." *Id.* at 966 (quoting *Long v. Teachers' Retirement Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009)).

Defendants contend that Regenauer has failed to show causation for any of these actions because he relies only on suspicious timing, which is "rarely" sufficient, standing alone, to survive summary judgment. *Kidwell*, 679 F.3d at 966. But Regenauer has adduced more evidence than suspicious timing. To begin, Northrop himself testified in his deposition that he was upset by Regenauer's testimony at the October 2018 board meeting. He said that shortly after the meeting, he told Regenauer that he "was blindsided" by Regenauer's testimony and that in the future, he wanted Regenauer to take his grievances to Northrop before "going up the chain of command" to the board. Dkt. 15 (Northrop Dep. 48:12–16). Likewise, Regenauer testified in his deposition that a few days later, Northrop again "said he felt blindsided by [Regenauer's] actions, he said that he felt thrown under the bus, and he felt that [Regenauer] was challenging his authority." Dkt. 14 (Regenauer Dep. 75:18–21).

Northrop's concerns about Regenauer bypassing the chain of command continued into the next year. In February 2019, Regenauer had a conversation with LeAnn Jones, one of the

---

the argument that the other actions were retaliatory. *Goodpaster*, 736 F.3d at 1075

two lieutenants that had been promoted in the restructuring plan. The conversation concerned a town board member who had told Northrop that shortly after the October board meeting, an officer had come to the board member with concerns about the restructuring plan, although the board member didn't name the officer. *See* Dkt. 15 (Northrop Dep. 48:12–16). Regenauer said that he believed that Northrop suspected Regenauer of approaching the board member. Regenauer denied to Jones that he had done so. He told her that he knew who had spoken with the board member but that he wouldn't tell her who it was. Jones testified that she told Regenauer, "You have a target on your back because this is what we're speculating: that you're the one that went to the board member." Dkt. 21 (Jones Dep. 72:24–73:1). True, Jones didn't say that Regenauer had a target on his back because of his protected speech. But a jury could reasonably infer that Northrop had concluded that Regenauer had approached the board member because he had testified against the plan in the board meeting.

Regenauer also adduces evidence specific to each of the adverse actions he challenges.

### 1. Investigation and threatened discipline

Regenauer was involved in two high-speed pursuits on December 19 and 30, 2018. After reviewing Regenauer's reports regarding these pursuits, Northrop issued a "predetermination notice" to him on February 4. Dkt. 21-2. In the notice, Northrop said that he had reached an initial determination that Regenauer should be suspended for six days without pay based on policy violations during the pursuits. He said that Regenauer could meet with him to provide evidence or explain why the discipline was unwarranted. *Id.*

Defendants contend that Northrop would have investigated and warned Regenauer for this conduct regardless of his protected speech. Regenauer doesn't deny that his conduct violated department policy, but he has adduced evidence from which a jury could infer pretext.

17

The timing of the predetermination notice supports an inference that Northrop deviated from the department's normal disciplinary practices to hurt Regenauer's chance at promotion. Northrop issued the predetermination notice on February 4, Dkt. 28-20, which was the same day that he announced the two open sergeant positions, Dkt. 28-19. Regenauer says that in the department, discipline is normally not issued until the department's investigation is completed and the employee has had a chance to present evidence. In support of this argument, Regenauer cites deposition testimony from Hasse, who said that he wasn't aware of any predetermination notices being issued in the department before Northrop issued one to Regenauer. Dkt. 19 (Hasse Dep. 80:19).

Defendants say that the timing of these two events was a coincidence because Northrop testified that he wasn't aware that Regenauer intended to apply for the open position at the time. *See* Dkt. 15 (Northrop Dep. 130:15–18). But Northrop was aware that Regenauer had applied for the previous open sergeant position, *id.* at 130:19–21, so it's reasonable to infer that he would have expected Regenauer to apply this time as well. Defendants also contend that the timing was coincidental because Northrop was attempting to clear his plate before leaving for vacation the following day. But this argument doesn't explain why Northrop deviated from department practices by issuing a predetermination notice rather than determining what discipline was warranted after a full investigation.

Placing this evidence alongside the evidence that Northrop was upset that Regenauer had bypassed the chain of command through his protected speech, a jury could reasonably conclude that Northrop wouldn't have issued the predetermination notice but for Regenauer's protected speech.

18

### 2. Promotion process

The promotion process for the two open sergeant positions involved three scored stages—a written test, an interview with a panel of law-enforcement managers from outside the department, and an interview with Northrop—and a fourth, unscored stage, in which Northrop reviewed each applicant's performance evaluations and personnel file. The three applicants received roughly comparable scores on their written tests and panel interviews, with Regenauer landing squarely in the middle of the candidates. On the written test, Tucker scored 91, Regenauer 86, and Cisneros 82. Dkt. 28-24. On the panel interview, Cisneros scored 83, Regenauer 78, and Tucker 75. *Id.* But in the third stage (the interview with Northrop), Tucker scored 92, Cisneros scored 80, and Regenauer scored only 46. After the scores from the three phases were averaged, Regenauer's low score in his interview with Northrop dropped him from second place to third. *See id.* Northrop wasn't required to recommend the two candidates with the highest scores for promotion, but the parties agree that the scores were a factor in his preference for Tucker and Cisneros over Regenauer.

Defendants contend that Northrop had a nonretaliatory reason for giving Regenauer a low score, which is that Regenauer simply performed poorly in the interview. Northrop says in a declaration that Regenauer's "answers were short, he did not expand on his answers, the answers were generic, and it appeared to me as if he seemed unprepared for the interview." Dkt. 24, ¶ 21. But a panel of disinterested law-enforcement managers also interviewed Regenauer, scoring him comparably to Cisneros and Tucker. A jury could reasonably observe the 32-point difference between Northrop's score and the score that Northrop's peers gave Regenauer and conclude that Northrop would have promoted Regenauer but for his admitted displeasure with Regenauer's protected speech.

### 3.  Performance improvement plan

A few days after Northrop issued the predetermination notice on February 4 regarding the two high-speed pursuits in December, Regenauer's union representative, Mike Goetz, contacted Northrop by email. Goetz raised concerns that Northrop had violated Regenauer's due-process rights by issuing the notice without first interviewing Regenauer and allowing him to present his evidence. Dkt. 28-41, at 3. Northrop scheduled a meeting with Regenauer and Goetz for February 18 to discuss the notice. Goetz testified in his deposition that during the meeting, Northrop agreed that the predetermination notice "would not have any effect right now and that [the department] would consider redoing the investigation and/or interviewing [Regenauer]."[2] Dkt. 18 (Goetz Dep. 42:1–5).

In March, Hasse interviewed Regenauer regarding the two pursuits involved in the predetermination notice as well as a third pursuit that had come to light. The third pursuit had occurred on December 8, but Regenauer hadn't written a report about it afterward and it hadn't been addressed in the predetermination notice. This pursuit came to Northrop's attention when Hasse wrote a memo to Northrop in mid-January stating that another officer had expressed concern to Hasse about Regenauer's speed during the pursuit. Dkt. 14-3.

---

[2] Regenauer says in his brief that he and Goetz "believed that the matter would not be investigated further" based on this meeting. Dkt. 33, at 18. Regenauer testified that after the meeting, he "was under the impression that this was done, over, and I was no longer going to be . . . under internal investigation." Dkt. 14 (Regenauer Dep. 158:9–12). But this statement is flatly contradicted by Goetz's testimony that both sides agreed that the department would consider redoing the investigation. Regenauer identifies nothing that was said during the meeting that would support the conclusion that he would not be investigated any further. So the court will take as undisputed that both sides agreed that the department could conduct a new investigation.

After Regenauer's interview with Hasse, Northrop issued a written reprimand on April 22. Dkt. 21-5. In the reprimand, Northrop concluded that Regenauer had violated multiple department policies. He noted that Regenauer's speed had reached 106 miles per hour during the December 8 pursuit, during which he "sped past [his] patrol partner and a fire truck (both responding to the same incident)." *Id.* at 1. He noted that Regenauer's speed had reached 115 miles per hour during the December 19 pursuit even though he was merely "trying to catch up" to other vehicles in pursuit. *Id.* And he noted that Regenauer's high-speed pursuit on December 30 wasn't warranted under department policy because the vehicle he was pursuing had been stopped merely for a traffic violation. Northrop wrote that he questioned whether Regenauer was "trainable" because Regenauer had offered "unsupportable" explanations for his "deliberate" actions. *Id.* at 2. He ordered Regenauer to attend four hours of remedial training and stated that he would have a meeting with Regenauer to discuss an improvement plan.

The follow-up meeting occurred on May 1. The parties agree that in the meeting, Northrop told Regenauer that he was a good officer but that he needed to follow the department's chain of command and not "go outside [the] department."[3] Dkt. 28-42. Northrop said that Regenauer would be temporarily removed from his outside duties with the county's Special Investigations Unit to focus on his duties in the department. And Northrop told Regenauer that Hasse would supervise and monitor Regenauer's performance until Regenauer met Northrop's expectations. Northrop memorialized the meeting in a letter to Regenauer dated that day. Dkt. 28-28.

---

[3] This quotation is taken from Goetz's handwritten notes taken during the meeting. Defendants don't dispute the accuracy of this quotation.

Regenauer doesn't deny that his conduct during the pursuits violated department policy. Defendants contend that Northrop would have disciplined Regenauer regardless of his protected speech because his conduct warranted discipline and because Northrop expects all department employees to follow the chain of command. But Northrop had twice expressed his frustration to Regenauer that Regenauer's speech to the board deviated from the chain of command. Based on Northrop's statements about the chain of command during the May 1 meeting and in the subsequent letter, alongside his earlier statements about how Regenauer's protected speech had bypassed the chain of command, a jury could reasonably conclude that Northrop wouldn't have imposed this discipline but for Regenauer's protected speech.

## C. Municipal liability

Defendants contend that the Town of Beloit is entitled to summary judgment on Regenauer's claim against it. A municipality is liable for a violation of a plaintiff's constitutional rights only if the violation was caused in one of three ways: (1) by the enforcement of the municipality's express policy; (2) by the municipality's "widespread practice" that was "permanent and well settled"; or (3) "by a person with final policymaking authority." *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). Regenauer's claim against the town is based on Northrop's conduct, and defendants concede in their reply brief that Northrop had final policymaking authority. *See* Dkt. 40, at 34. So they aren't entitled to summary judgment on this claim.

## D. Qualified immunity

Defendants contend that Northrop is entitled to qualified immunity for his actions. Qualified immunity protects public officials from personal liability for their unconstitutional actions unless those actions violated a right that was "clearly established at the time of the

violation." *Day v. Wooten*, 947 F.3d 453, 460 (7th Cir. 2020). A right is "clearly established" if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks removed). This standard doesn't require "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Defendants contend that it was not clearly established that Regenauer's speech was protected or that Northrop's conduct was retaliatory. The court disagrees on both points. As for Regenauer's speech, defendants' arguments focused on whether he spoke on a matter of public concern. The content of Regenauer's speech included questions of public safety, which, as noted above, the court of appeals has "long recognized" as one of the matters of greatest public concern. *Gustafson*, 290 F.3d at 907. And defendants identified nothing about the context or form of his speech suggesting that Regenauer didn't speak on a matter of public concern.

And as for Northrop's conduct, denied promotions and disciplinary actions motivated by protected speech have long been recognized as giving rise to retaliation claims. *See, e.g., Fuerst v. Clarke*, 454 F.3d 770 (7th Cir. 2006) (county sheriff not entitled to summary judgment on First Amendment retaliation claim based on failure to promote); *Bart v. Telford*, 677 F.2d 622, 624–25 (7th Cir. 1982) (plaintiff who alleged "campaign of petty harassments" including "baseless reprimands" stated First Amendment retaliation claim).

It was clearly established at the time of Northrop's conduct that a public employee's speech on public safety addresses a matter of public concern and that promotion denial and

discipline can be unconstitutional retaliation. Northrop is not entitled to qualified immunity for his actions.

## E. Punitive damages

In his complaint, Regenauer seeks punitive damages against Northrop. Such damages are appropriate only if Northrop's conduct was the result of "evil motive or intent" or "involve[d] reckless or callous indifference" to Regenauer's First Amendment rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Defendants contend that punitive damages are unavailable here as a matter of law because Regenauer has failed to adduce any evidence that Northrop's conduct met this standard.

Regenauer has adduced enough evidence, taken in the light most favorable to him, to allow a jury to reasonably conclude that Northrop's conduct resulted from evil motive or intent. Northrop repeatedly expressed frustration about Regenauer's speech, and Regenauer alleges that Northrop engaged in several months of retaliatory conduct that Regenauer described as "five months straight of hell" in a conversation with a coworker. Dkt. 14 (Regenauer Dep. 172:8–9). Regenauer may seek punitive damages at trial.


ORDER

IT IS ORDERED that defendants' motion for summary judgment, Dkt. 22, is DENIED. Entered May 25, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge